**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ALFORD SAFETY SERVICES, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 10-1319** |
| **HOT-HED, INC., ET AL** | **SECTION: B(3)** |

## ORDER AND REASONS

Before the Court is Defendants Hot-Hed, Inc. and Hot-Hed Sales & Services, Inc.'s Motion to Dismiss or alternatively, to Sever and Transfer venue. (Rec. Doc. No. 14). Plaintiff Alford Safety Services has filed a Memorandum in Opposition. (Rec. Doc. No. 24). A reply Memorandum has also been filed. (Rec. Doc. No. 30).

**IT IS ORDERED** that Defendant's Motion to Dismiss and alternative Motion to Sever and Transfer venue are both **DENIED.**

### *Background:*

Plaintiff Alford Safety Services ("Alford") filed a Complaint against Defendants Hot-Hed, Inc. and Hot-Hed Sales & Services, Inc. (Collectively, "Hot-Hed") alleging infringement of four patents (the "Alford Patents") under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.* (Rec. Doc. No. 14-3 at 1); (Rec. Doc. No. 24 at 1). Alford's Complaint joins Hot-Hed with one of its competitors, SafeZone, as a co-defendant. (Rec. Doc. No. 14-3 at 1). Alford is a Louisiana-based corporation, with its principal offices located in Houma, Louisiana and files its Complaint in the Eastern District of Louisiana. (Rec. Doc. No. 1). Alford provides

oil field and offshore services in the Gulf of Mexico and has developed its own welding habitat for welding in hazardous conditions since at least the year 2002. (Rec. Doc. No. 24 at 1). This welding habitat is the subject matter of the Alford Patents and relates to a habitat system for welding and "hot work" in areas near flammable materials. (Rec. Doc. No. 24 at 1).

Defendant Hot-Hed, a Texas-based corporation, also provides oil field and offshore services in the Gulf of Mexico. (Rec. Doc. No. 24 at 1). Hot-Hed also uses a welding habitat, which Plaintiff alleges infringes on at least one of the claims of the Alford Patents. (Rec. Doc. No. 24 at 1). Hot-Hed has used their welding habitat for BP Exploration and Production, Inc. (BP). (Rec. Doc. No. 24 at 1). BP requested a Hot-Hed Habitat Welding Isolation Chamber on the Thunder Horse oil platform, which is located 150 miles southeast of New Orleans, Louisiana on the Outer Continental Shelf adjacent to Louisiana. (Rec. Doc. No. 24 at 2). Moreover, from time to time, Hot-Hed employees board a helicopter from Houma-Terrebonne to land on an oil platform where the Hot-Hed welding habitat is in use. (Rec. Doc. No. 24 at 2); (Rec. Doc. No. 14-3 at 3).

Hot-Hed files this action to dismiss on the following grounds: (1) pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction; (2) pursuant to Federal Rules of Civil Procedure 12(b)(6) for failing to state a claim upon which relief

can be granted; and (3) pursuant to Federal Rules of Civil Procedure 12(b)(3) for improper venue. (Rec. Doc. No. 14-3 at 1). In the alternative, Hot-Hed seeks severance from co-defendant SafeZone and that this claim be transferred to the United States District Court for the Southern District of Texas. ((Rec. Doc. No. 14 at 1-2).

Hot-Hed contends that it does not maintain the requisite minimum contacts with the State of Louisiana in order for personal jurisdiction to be exercised over them. (Rec. Doc. 14-3 at 5). Hot-Hed argues that it is a Texas-based corporation with no office, no agent, and no real property in Louisiana. (Rec. Doc. No. 14-3 at 5). They also argue that besides the few instances where employees board a helicopter in Houma-Terrebone to travel to the offshore oil platform, they do not conduct business in Louisiana or in its territorial waters. (Rec. Doc. No. 14-3 at 5). Moreover, Hot-Hed has never consented to jurisdiction in Louisiana. (Rec. Doc. No. 14-3 at 5). Thus, Hot-Hed argues general jurisdiction is inapplicable. (Rec. Doc. No. 14-3 at 5).

Hot-Hed argues specific jurisdiction is not proper because it has not "purposely directed" its activities toward Louisiana residents and Hot-Hed's activities within the State would not allow them to anticipate being haled into court in this jurisdiction. (Rec. Doc. no. 14-3 at 5). They argue that the accused welding habitat is developed in Texas and only offered for rent in Texas,

thus arguing specific jurisdiction is inapplicable. (Rec. Doc. No. 14-3 at 5-6).

Moreover, Hot-Hed argues that even if minimum contacts were found, the Due Process Clause would not allow personal jurisdiction since it offends "traditional notions of fair play and substantial justice." (Rec. Doc. No. 14-3 at 6). They argue that all their witnesses reside in Texas and it would be a great burden to litigate in Louisiana. Hot-Hed also contends that Louisiana has no interest in the dispute because the result will not affect Louisiana or its residents. (Rec. Doc. No. 14-3 at 7). Defendant also argues that the median time for filing a civil case is eleven month in the Eastern District of Louisiana and it is only 7.2 months in the Southern District of Texas and thus the Court should take this time difference into consideration when determining if transfer is appropriate. (Rec. Doc. No. 14-3 at 7).

Defendant also argues that Alford has failed to state a claim for which relief can be granted under the Federal Rules of Civil Procedure Rule 12(b)(6) and the Complaint lacks specific facts required by the Federal Rules of Civil Procedure Rule 8. (Rec. Doc. No. 14-3 at 8). Thus, Defendant claims the Complaint is devoid of the requisite supporting facts required via Rule 8 and the Complaint is too general. (Rec. Doc. No. 14-3 at 10). Hot-Hed argues that Alford does not describe the accused welding habitat in enough detail, opting to generally describe it as a welding device

4

and not listing any of the elements that supposedly infringes on the patent. (Rec. Doc. No. 14-3 at 11). More so, Hot-Hed alleges Alford's Complaint fails to state a claim because it does not accuse Hot-Hed of having knowledge of Alford Patents or that Hot-Hed had a specific intent to infringe. (Rec. Doc. No. 14-3 at 10).

Alford contends that Hot-Hed purposefully conducted activities in Louisiana related to the alleged infringement and thus meets the criteria for minimum contacts. (Rec. Doc. No. 24 at 5). Alford says that Hot-Hed had its employees travel into Louisiana and use it as a port of departure to travel by helicopter to and from the offshore area where the welding device was used. (Rec. Doc. No. 24 at 5). Alford also infers that the staging of personnel, gear, and equipment for the welding habitat all occurred in Louisiana. (Rec. Doc. No. 24 at 5). Moreover, Alford argues that the BP platform where Hot-Hed's employees have attended the welding habitat is a area covered by the Outer Continental Shelf Lands Act (OCSLA) and for incidents occurring on an OCSLA site, the laws of the adjecent state would apply - in this case, that state is Louisiana. (Rec. Doc. No. 24 at 6).

Alford also claims that Hot-Hed has twenty-five offices worldwide and it would not be a burden to adjudicate an issue in a neighboring state. (Rec. Doc. No. 24 at 7). Thus, this short distance is not enough to be considered a burden where adjudication must be transferred. (Rec. Doc. No. 24 at 7). Alford also argues

that Louisiana does have a interest in adjudicating the dispute because Hot-Hed conducts activities in Louisiana. Also, Louisiana would want to protect the intellectual property rights of Alford, a Louisiana based corporation. (Rec. Doc. No. 24 at 8).

Alford also counters the argument that most of Hot-Hed's witnesses are located in Texas by contending all of Alford's witnesses are in Louisiana. The co-defendant, SafeZone, is also a Louisiana based corporation and therefore adjudication in this State as a single action, would be the most efficient way to handle the claim.

Alford also requests jurisdictional discovery if the Court is not inclined to deny Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. (Rec. Doc. No. 24 at 9).

Plaintiff also argues that venue is proper in Louisiana, as it is "the judicial district where the defendant resides" and a corporate defendant "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction." (Rec. Doc. No. 24 at 10). Thus, Alford argues that if this Court finds personal jurisdiction exists, then this jurisdiction is proper. (Rec. Doc. No. 24 at 10).

Alford also argues that the defendants have been properly joined under Federal Rules of Civil Procedure Rule 20 since the events are "logically related." (Rec. Doc. No. 24 at 11). Alford relies on *MyMail, Ltd. v. America Online*, where the plaintiff sued

many defendants alleging patent infringement and the court applied a logical relationship test to "the nucleus of operative facts or law" to find that the Rule 20 requirement was satisfied. *See MyMail, Ltd. v. America Online, Inc.*, 223 F.R.D. 455 (E.D. Tex. 2004); (Rec. Doc. No. 24 at 12).

Moreover, Alford contends that Hot-Hed's motion to transfer venue if severance is granted, should be denied after considering private and public interest factors. (Rec. Doc. No. 24 at 15). Alford argues that if the claim is transferred, it would lead to adjudication of two actions with the possibility of inconsistent decisions. (Rec. Doc. No. 24 at 15). Also, Louisiana has a strong public interest to protect its residents from patent infringement.

For private interest factors, Alford argues that it would not be a great burden for Hot-Hed to adjudicate in this jurisdiction with the widespread availability of electronic documents. Thus, they argue that "this case is not being consigned to the wastelands of Siberia or some remote distance area," and Louisiana's 350 mile distance is not a great burden.

### ***Discussion:***

*I. Motion to Dismiss*

*A. Personal Jurisdiction*

    *1. Minimum Contacts*

The Due Process Clause of the Fourteenth Amendment allows a court to exercise personal jurisdiction over an out-of-state

defendant when:(1) "that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) "the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *See, e.g., Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002); *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts can arise in one of two ways. First, if the Defendant has a series of "continuous and systematic contacts" with the forum, "general" jurisdiction is satisfied. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Thus, if a Defendant created "continuing obligations" between himself and residents of the forum, general jurisdiction exists. *Id.* Alternatively, "A forum may assert specific jurisdiction over a nonresident defendant where an alleged injury arises out of or relates to actions by the defendant *himself* that are purposefully directed toward forum residents, and where jurisdiction would not otherwise offend 'fair play and substantial justice.'" *Id.*

Louisiana's long arm statute extends as far as it is permitted by Due Process. *See Warrior Energy Services Corp. v. Wellmaster Consulting, Inc.*, 2010 WL 2710631 at *1 (W.D. La. 2010). Here, Alford does not posit that Hot-Hed has general jurisdiction in Louisiana as it is agreed that Hot-Hed does not have "continuous" contacts with the State. Therefore, the analysis focuses on

8

specific jurisdiction. Alford argues that Hot-Hed's activities with Louisiana are directly related to the alleged patent infringement while Hot-Hed contends it did not direct any activities to Louisiana residents.

There is a three part test to determine specific jurisdiction: (1) "whether the defendant purposefully directed its activities toward the forum state or purposely availed itself of the privileges of conducting business therein"; (2) "whether the cause of action arises out of or relates to those activities"; and (3) "whether the exercise of personal jurisdiction is reasonable and fair." *Akro Corp. v. Luker*, 45 F. 3d 1541, 1545-46 (Fed. Cir. 1995). Courts have held that:

> When a nonresident defendant commits a tort within the state, or an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state, including federal courts, to exercise personal adjudicative jurisdiction over the tortfeasor and the causes of actions arising from its offenses or quasi-offenses.

*Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 628 (5th Cir. 1999); *Jobe v. ATR Marketing, Inc.*, 87 F.3d 751, 753 (5th Cir 1996).

The Supreme Court has said that "even a single contact with a forum state may suffice for personal jurisdiction if it is directly and substantially related to the plaintiff's claim." Here, Hot-

Hed's equipment traveled from Houston, Texas, through Louisiana to an oil platform next to Louisiana. (Rec. Doc. No. 34 at 3). Moreover,

> "It is well settled that specific jurisdiction may arise without the nonresident defendant's ever stepping foot upon the forum state's soil or may arise incident to the commission of a single act directed at the forum. The appropriate inquiry is whether the defendant purposefully availed herself of the privilege of conducting activities in-state, thereby invoking the benefits and protections of the forum state's laws."

*Clark v. Moran Towing & Transp. Co., Inc.*, 738 F.Supp. 1023, 1026 (E.D. La. 1990). In *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F. 3d 374, 379 (5th Cir. 2002), the court determined that an Italian company who furnished a ship from Italy to Louisiana for the Plaintiff was subject to personal jurisdiction in Louisiana. The Court reasoned that "even where a defendant has no physical presence in the forum state, a single purposeful contact is sufficient to confer personal jurisdiction if the cause of action arises from the contact." *See, e.g., Nuovo Pignone, SpA* 310 F. 3d at 379; *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222 (1957). The Defendant in *Nuovo Pignone, SpA* agreed to secure a vessel that would safely unload cargo in Louisiana and therefore should have reasonably anticipated being haled into court, if the need arised. *Nuovo Pignone, SpA* 310 F. 3d at 379. The Court was careful to note that had the Defendant agreed to transport the vessel from Italy to Mexico and due to bad weather, it was forced to dock in Louisiana

where the accident occurred, that event would not confer personal jurisdiction. *Nuovo Pignone, SpA* 310 F. 3d at 379 n.2. The Defendant could not have reasonably foreseen being haled into court. *See id.* The instant case can be compared to *Nuovo Pignone, SpA*. Here, Hot-Hed transports equipment through Louisiana and if an accident were to occur with that transportation, it would not be unreasonable to expect Hot-Hed to be brought to court in Louisiana. Moreover, there are several employees who board helicopters in Louisiana and again, if some accident were to occur, Louisiana would not be such a unfathomable forum that Hot-Hed would have been completely unprepared for litigation in Louisiana. Thus, the reasoning in *Nuovo Pignone, SpA* can be applied here – if the Defendant is conducting even a minor activity in the forum state where he can anticipate being haled into court, personal jurisdiction is proper. *See id.*

Additionally, Plaintiff directs the Court to 43 U.S.C. §§ 1333, which is the Outer Continental Shelf Lands Act (OCSLA). The OCSLA covers a work location on a stationary platform attached permanently or temporarily to the seabed on the Outer Continental Shelf (OCS). In *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 355 (1969) two accidents occurred on a stationary platform in the seas and the Supreme Court held that "because the deaths occurred on stationary platforms on the Outer Continental Shelf – each a covered situs under OCSLA – Louisiana law applied as surrogate

federal law through OCSLA."

The statute OCSLA, provides in pertinent part:

> "(2)(A) To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State, now in effect or hereafter adopted, amended, or repealed are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf ...."

43 U.S.C. §§ 1333(a)(1), (2)(A). Thus, the rights of Hot-Hed with regards to OSCLA covered claims will be governed by Louisiana law, since the offshore situs is near the State. While this instant case is not an OSCLA claim, Hot-Hed could be held accountable under Louisiana law, for certain suits, demonstrating that again, it is not completely unforeseeable that Hot-Hed would be haled into a Louisiana court.

In sum, Hot-Hed is unable to argue that their contact with Louisiana is random or fortuitous. Hot-Hed provides oil field and offshore services in the Gulf of Mexico and offers a welding habitat on behalf of BP Exploration and Production, Inc. (BP). (Rec. Doc. No. 24 at 2). BP requested a Hot-Hed Habitat Welding Isolation Chamber on the Thunder Horse oil platform, which is located 150 miles southeast of New Orleans, Louisiana on the Outer

Continental Shelf adjacent to Louisiana. (Rec. Doc. No. 24 at 2). Hot-Hed personnel supervise the operation of this off-shore facility. (Rec. Doc. No. 24 at 2). Hot-Hed knowingly transported equipment through the State. (Rec. Doc. No. 24 at 2). Supply boards depart for this off-shore facility from Port Fourchon or other Louisiana locations. (Rec. Doc. No. 24 at 2). Hot-Hed employees travel to Houma-Terrebonne to board a helicopter to go to an oil platform where Hot-Hed welding habitat was operated. (Rec. Doc. No. 14-3 at 3). By Hot-Hed's own admission, they "hardly" conduct any business in the State of Louisiana and they conduct no business in Louisiana's territorial waters. (Rec. Doc. No. 14-3 at 3). Therefore, Hot-Hed is subject to personal jurisdiction in Louisiana.

### 2. Traditional Notions of Fair Play and Substantial Justice

Additionally, "these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S., at 320. Courts examine specific factors to deem proper personal jurisdiction: 1) "the burden on the defendant," 2) "the forum State's interest in adjudicating the dispute," 3) "the plaintiff's interest in obtaining convenient and effective relief," 4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies;" and 5) "shared interest of

the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 292.

*a. Burden on the Defendant*

Here, Defendant Hot-Hed is based in Houston, Texas, which is approximately 350 miles from the chosen venue in Louisiana. "Both the Supreme Court and the Fifth Circuit have stated that the burden on a defendant to defend a suit in a foreign country may be justified if the interests of the plaintiff and the forum are of sufficient importance." *In re Norplant Contraceptive Products Liability Litigation*, 899 F. Supp. 315, 317 (E.D. Tex. 1995).

In *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F. 3d 1558, 1569 (Fed. Cir. 1994), the court held that because the New Jersey Defendant was not located a considerable distance from Plaintiff's venue choice in Virginia, the interests of Plaintiff and the State of Virginia outweighed any minor inconvenience Defendant may experience. Similarly, here the distance does not outweigh the interest Louisiana has in adjudicating dispute with one of its own corporations. While it may be inconvenient for Hot-Hed, they have twenty-five offices worldwide, they should expect to litigate over much further distances than an adjacent state.

*b. The Forum State's Interest in Adjudicating the Dispute*

Hot-Hed's argument that Louisiana has no interest in adjudicating this dispute is without merit. This Court has

previously said that "the State of Louisiana does have an interest in protecting the intellectual property rights of its business entities." *Parti-Line Intern., L.L.C. v. Bill Ferrell Co.*, F. Supp. 2d, 2005 WL 578777 at *6 (E.D. La. 2005). While Hot-Hed is not a Louisiana corporation, Plaintiff Alford who brought the suit is based out of Louisiana. Moreover, "the Federal Circuit has expressly held that in patent cases, the situs of a patent infringement injury is the location 'at which the infringing activity directly impacts on the interests of the patentee.'" *Id.* (quoting *Beverly Hills Fan*, 21 F. 3d at 1571). The Federal Circuit has also noted that a state "clearly has an interest in prohibiting the importation of infringing articles into its territory and regulating the conduct of the distributors with respect to the subsequent resales." *North American Philips Corp. v. American Vending Sales, Inc.*, 35 F. 3d 1576, 1580 (Fed. Cir. 1994). Like in *Parti-Line Intern., L.L.C.*, where the Court held that this district was an appropriate forum for a patent infringement suit, here Alford's claim is similar and thus this district should likewise be interested in adjudicating the suit.

c. *The Plaintiff's Interest in Obtaining Convenient and Effective Relief*, *the Interstate Judicial System's Interest in Obtaining the Most Efficient Resolution of Controversies and Shared Interest of the Several States in Furthering Fundamental Substantive Social Policies*

Hot-Hed argues that Texas is a more appropriate forum because Hot-Hed, as well as most of the witnesses, are located there and not in Louisiana. Hot-Hed fails to realize that most of Alford's witnesses as well as co-defendant Safezone's, are all located in Louisiana and thus Texas would be an inefficient and inconvenient forum for two of the three parties.

Moreover, the Supreme Court has said "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." While this addresses the Motion to Transfer issue, it can be applied to this factor. *In re Volkswagen of America, Inc.*, 566 F. 3d 1349, 1351 (5th Cir. 2009). Alford would have to bring a very similar suit against Safezone if Hot-Hed were not adjudicated in Louisiana. That would waste time and energy of the courts and it would be efficient for adjudication to occur one time, in one venue.

*B. Failure to State a Claim on which Relief Can Be Granted*

Federal Rules of Civil Procedure Rule 12(b)(6) allows dismissal of a complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal is proper only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See, e.g., Brown v. Nationsbank Corp.*, 188 F. 3d

579, 585-86 (5th Cir. 1999). Dismissals under 12(b)(6) are rarely granted and for the most part, disfavored. *Rodriguez v. Rutter*, 310 Fed. Appx. 623, 626 (5th Cir. 2009). For review, the Court accepts all well-pleaded allegations as true and views the light in the most favorable to the non-moving party. *See id.*

The Court has constructed a "two-pronged approach" to determine whether a complaint states a plausible claim for relief. *See Rhodes v. Prince*, 360 Fed. Appx. 555, 558 (5th Cir. 2010). First, the Court must identify those pleadings that, "because they are no more than conclusions, are not entitled to the assumption of truth." *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). Legal conclusions "must be supported by factual allegations." *Id.* Second, once identifying the well-pleaded allegations, the Court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Furthermore, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

Hot-Hed argues that Alford's pleading does not contain sufficient factual matter and thus should be dismissed for failure to state a claim for which relief can be granted. Hot-Hed argues that the Complaint lacks details on how Hot-Hed's welding habitat infringes on any of the ninety-five claims in the Alford Patents. (Rec. Doc. No. 14-3 at 8).

In *Johnson v. Johnson*, 385 F. 3d 503, 531 n.19 (5th Cir. 2004), the Defendants argued for dismissal under Rule 12(b)(6) because "[a]ll of Plaintiff's allegations regarding equal protection are made on 'information and belief. . . .'" Id. The Fifth Circuit held that "'information and belief' pleadings are generally deemed permissible under the Federal Rules, especially in cases in which the information is more accessible to the defendant." *See id.* Like *Johnson*, here Hot-Hed argues that Alford is simply reciting their Complaint based "on information and belief." (Rec. Doc. 14-3 at 10). As discussed *supra*, the Fifth Circuit has deemed such a pleading appropriate. Moreover, this information likely is more accessible to Defendant Hot-Hed since it is their product that is allegedly infringing on the Alford patent, which would allow for an even more flexible use of the Rule. *See Johnson*, 385 F. 3d at 531 n.19.

*C. Improper Venue*

Hot-Hed asks that this Court dismiss Alford's claim under the Rules of Civil Procedure 12(b)(3) since Alford filed the claim in the wrong venue. The venue statute of 28 U.S.C. § 1400(b) concerns patent infringement cases and states that venue is proper "where the defendant resides." Corporate defendants in patent infringement cases "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction." 28 U.S.C. § 1391(c); *See VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1583

(Fed. Cir. 1990). The court has found that personal jurisdiction exists over Hot-Hed and thus venue would be proper in Louisiana.

II. *Motion to Sever Plaintiff's Claims*

Under the Federal Rules of Civil Procedure Rule 20, the joining of two or more defendants is allowed when a right to relief is asserted "with respect to or arising out of the same transactions or occurrence" and "and question of law or fact common to all defendants will arise in the action." Fed. R. Civ. Pro. 20. Under the Federal Rules of Civil Procedure Rule 21, a court can "sever any claim against a party." Fed. R. Civ. Pro. 21. Notably:

> There is no strict rule for determining what constitutes the same occurrence or series of transactions or occurrences for purposes of Rule 20(a). Furthermore, Rule 20(a) does not require that every question of law or fact in the action be common among the parties; rather, the rule permits party joinder whenever there will be at least one common question of law or fact.

*Guedry v. Marino*, 164 F.R.D. 181, 184 (E.D. La. 1995).

In *Guedry*, seven Plaintiffs joined to sue one Defendant, alleging constitutional violations after their commissions as deputies were not renewed by Defendant. Defendant attempted to sever the claims, insisting they did not arise from the same transaction or occurrence and that severance was proper and would promote judicial economy. *Id.* Plaintiffs argued there was a common question of law and fact much so that joinder was proper. *Id.* It is established that "The purpose of Rule 20(a) is to promote trial

convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *See Mosley v. General Motors Corp.*, 497 F. 2d 1330, 1332 (8th Cir. 1974). The court then held that while the Plaintiffs' claims may have each had differing factual backgrounds, all of the allegations revolved around termination claims stemming from alleged First Amendment violations. *Guedry*, 164 F.R.D. at 184-85. Thus, "the alleged discriminatory activity directly affecting each of them, includes common legal and factual questions" and joinder was proper. *Id.* at 185.

In a similar intellectual property rights suit, a Plaintiff, MyMail, Ltd. sued several corporations for patent infringement. *See MyMail, Ltd. v. America Online, Inc.*, 223 F.R.D. 455, 456 (E.D. Tex. 2004). Plaintiff joined the Defendants, who are all subsidiaries of one corporation, but Defendants argued that the claims did not arise out of the same transaction or occurrence and that severance was proper. *Id.* The court, however, agreed with the Plaintiff and held that the claim did arise out of the same transaction or occurrence. *Id.* Moreover, giving allowances, the court further stated that once discovery was complete, a final determination concerning severance would be evaluated. *Id.*

In *Mannatech, Inc. v. Country Life, LLC.*, 2010 WL 2944574 at *1 (N.D. Tex. 2010), Plaintiff joined three Defendants for a patent infringement action and one Defendant requested severance. *Id.* The

Court held that all three of the Defendants had products which allegedly infringed on the same patent, which met the first requirement of Rule 20(a)(2) of arising out of the same transaction or occurrence. *Id.* at *2. Moreover, the Court also held that there were common questions of law and fact regarding the claim, satisfying the second requirement of Rule 20(a)(2). *Id.*

The instant case can be compared to the three cases discussed *supra*. Here, both Hot-Hed and Safezone are being sued for patent infringement on a welding habitat. Even if the designs of each habitat may differ, the underlying issue is the same -patent infringement for the same patents. Thus, the reasoning of *Guedry*, *MyMail, Ltd.*, and *Mannatech, Inc.* - namely that patent infringement meets the permissive qualities of the joinder rule - can be applied here. *See, e.g., Guedry*, 164 F.R.D. at 184-85; *MyMail, Ltd., Inc.*, 223 F.R.D. at 456; *Mannatech, Inc.*, 2010 WL 2944574 at *1. Additionally, after all discovery is complete, this court has the discretion to consider severance at that point, as per *MyMail, Ltd.* 223 F.R.D. at 456.

The Defendants in *MyMail, Ltd.* did cite several district court cases which had one view that held that "... acts of infringement by separate defendants do not satisfy the same transaction requirement." 223 F.R.D. at 456. For example, in *Androphy v. Smith & Nephew, Inc.*, 31 F. Supp. 2d 620, 623 (N.D. Ill. 1998), the court said that while both Defendants were alleged to infringe on the

same patent, that did not signify that the claims arose out of the same transaction or occurrence. *Id.* The court held that the two Defendants were separate corporations and thus severance was proper. *Id.* While some courts do hold that view, the majority hold the view that joinder is proper in patent infringement suits. All of the Fifth Circuit cases discussed *supra*, also hold the majority view. *See, e.g., Mannatech, Inc. v. Country Life, LLC.*, 2010 WL(N.D. Tex. 2010); *MyMail, Ltd. v. America Online, Inc.*, 223 F.R.D. 455 (E.D. Tex. 2004); *DataTreasury v. First Data Corp.*, 243 F. Supp 2d 591 (N.D. Tex. 2003); *Invitrogen Corp. v. Gen'l Elec. Co.*, No. 6:08-cv-112 WL 331891 (E.D. Tex. Feb. 9, 2009).

In sum, Hot-Hed's Motion to Sever claims pursuant to Federal Rules of Civil Procedure 21, is without merit and joinder is proper.

III. *Motion to Transfer*

Motion to Transfer an action to a different venue is governed by 28 U.S.C. §1404(a) which provides "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §1404(a)(1996). Determination of whether to grant a Motion to Transfer rests within the discretion of the Court, and is reviewed under an abuse of discretion standard. *See Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989).

When analyzing a motion to transfer, "the preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *In re Volkswagen of America, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008). Here, that question would be whether or not this suit could have been brought in the Southern District of Texas. In this case, that forum would be appropriate because under 28 U.S.C § 1400(b), "any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Thus, the Southern District of Texas, where Hot-Hed has its principal office, would be permitted.

Second, when examining a motion to transfer, the court must consider the convenience of the parties and witnesses and balance public and private factors to determine whether the transfer would be more just. *Id.* at 314-316. The private interest factors are: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the cost of obtaining attendance of witnesses and other trial expenses; (4) the place of the alleged wrong; and (5) the possibility of delay and prejudice if the court grants the transfer. The public interest factors are: (1) the administrative difficulties resulting from court congestion; (2) the relationship to the community from which jurors will be drawn to the litigation; (3) the local interest in having localized controversies decided at

home; and (4) choice of law issues. *See, e.g., Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *Sanders v. Seal Fleet, Inc*., 998 F.Supp. 729, 738 (E.D. Tex. 1998); *Peters v. Milton Hall Surgical Associates*, L.L.C., 2003 WL 22174274 at *2 (E.D. La. 2003); *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). However, taking all the factors together, unless they balance heavily in favor of the Defendant, the Plaintiff's choice of forum should rarely be disturbed. *Columbia Energy Services Corp. v. TDC Energy Corp.*, F. Supp. 2d, 2002 WL 272382 at *2 (E.D. La. 2002). The Plaintiff's choice of forum "is held to be 'highly esteemed,' and entitled to great weight, especially if the forum he chooses is in the district in which he resides." *Id.*

1. *Public Interest Factors*

   a. *Court congestion*

As Hot-Hed notes, the median time for filing dispositions in all civil cases was eleven months in the Eastern District of Louisiana while the time is 7.2 months in the Southern District of Texas. However, this Court has acknowledged that the Eastern District of Louisiana moves its docket "expeditiously" and previous rulings have deemed the docket "not congested." *See, e.g., Martin v. National R.R. Passenger Corp.*, F. Supp. 2d, 2003 WL 328311 at *2 (E.D. La. 2003); *Holmes v. Warrior & Gulf Navigation Co.*, F. Supp. 2d, 2004 WL 1774615 at *5 (E.D. La. 2004). Thus, it is unlikely the

four months difference between filing will have such a vast bearing on the suit that would justify transfer. Therefore, this factor does not greatly favor transfer.

   *b. Relationship to community and local interest*[1]

Louisiana does have an interest in adjudicating the dispute. This Court has already said that the "State of Louisiana does have an interest in protecting the intellectual property rights of its business entities." *Parti-Line Intern., L.L.C. v. Bill Ferrell Co.*, F. Supp. 2d, 2005 WL 578777 at *6 (E.D. La. 2005). Also, "the Federal Circuit has expressly held that in patent cases, the situs of a patent infringement injury is the location 'at which the infringing activity directly impacts on the interests of the patentee.'" *See id.* (quoting *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F. 3d 1558, 1571 (Fed. Cir. 1994). Thus, Hot-Hed's argument that Texas is more greatly affected than Louisiana is without merit.[2]

2. *Private Interest Factors*

   *a. Plaintiff's Choice of Forum*

The Court has previously said "it is clear under Fifth Circuit precedent that the plaintiff's choice of forum is clearly a factor

---

[1]This section encompasses both public interest factors two and three.

[2]Public interest factor four, choice of law issues, has no bearing on the instant case.

to be considered but in and of itself it is neither conclusive nor determinative." *In re Horseshoe Entertainment*, 337 F. 3d 429, 434 (5th Cir. 2003). Moreover, "the plaintiff's privilege of choosing his venue, at the very least, places the burden on the defendants to demonstrate why the forum should be changed." *Time, Inc. v. Manning*, 366 F. 2d 690, 698 (5th Cir. 1966). *In Roulston v. Yazoo River Towing, Inc.*, F. Supp. 2d, 2004 WL 1687232 (E.D. La. 2004), the court held that venue transfer was proper and one factor contributing to that decision was the Plaintiff did not reside in his chosen venue. The Court will afford less deference to the Plaintiff's choice if the Plaintiff does not reside in that chosen forum. *Id.* Moreover, a Plaintiff's choice of forum is generally "highly esteemed" and is entitled to great weight. *Time, Inc.*, 366 F. 2d at 698. Here, Plaintiff does reside in the chosen forum, thus allowing for a greater degree of deference to what the Plaintiff requests. Therefore, the fact that Plaintiff chose Louisiana as a venue does weigh into this analysis.

   *b. Location of incident*[3]

   The location of the incident is an important factor when determining venue. *See, e.g., Holmes v. Warrior & Gulf Navigation Co.*, F. Supp. 2d, 2004 WL 1774615 at *3 (E.D. La. 2004). Here, the device was in use offshore, adjacent to Louisiana. Moreover, a

---

[3]This section of the analysis comprises both the second and fourth private interest factors.

Louisiana based corporation is affected and Louisiana has interest in the suit. Thus, there is a relationship between the Plaintiff and his choice of forum.

### c. Availability of Witnesses and Parties

Arguably, this factor is the most important when analyzing a Motion to Transfer. *See Aland v. Faison Associates*, F. Supp., 1998 WL 355468 (N.D. Tex. 1998). In *Goodman Co., L.P. v. A & H Supply, Inc.*, 396 F. Supp. 2d 766, 776 (S.D. Tex. 2005), the Defendant argued that even if venue was proper in the Plaintiff's chosen venue, the suit should be moved for reasons of convenience. The court determined that even if moving the suit to Defendant's venue was convenient to them, it would be much less convenient for the Plaintiff. *Id.* Defendant claimed all of its witnessed were located in Idaho and requested the transfer but all of Plaintiff's witnesses were located in Texas. *Id.* A case should not be transferred if the "only practical effect is to shift inconvenience from the moving party to the nonmoving party." *Id.* Additionally, it must be considered that there is a co-defendant involved in this suit, who is based in Louisiana. Thus, not only is Louisiana more convenient for the Plaintiff, but also co-defendant Safezone. If transferred to Texas, both of those two parties would be greatly burdened whereas if the suit remains Louisiana, only Hot-Hed is inconvenienced.

Moreover, "as to expense, parties 'encounter certain unavoidable costs and encumbrances in going to trial. It is rare in federal court that the chosen forum is the least expensive venue for every individual affiliated with the dispute." *CIT Group/Commercial Services, Inc. v. Romansa Apparel, Inc.*, F. Supp. 2d, 2003 WL 169208 at *5 (N.D. Tex. 2003). Additionally, as the Fifth Circuit once noted, "this case is not being consigned to the wastelands of Siberia or some remote, distant area of the Continental United States." *DataTreasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591, 595 (N.D. Tex. 2003). Thus, the 350 mile distance should not be so burdensome for a corporation with offices located throughout the world.

### d. Delay

As discussed *supra*, the four months time difference between the Louisiana court and the Texas court would not be an unreasonable delay and does not warrant transferring venues.

### Conclusion:

**IT IS ORDERED** that Defendant's Motion to Dismiss and alternative Motion to Sever and Transfer venue are both **DENIED.**

New Orleans, Louisiana this 23rd day of August, 2010.

_____

UNITED STATES DISTRICT JUDGE